IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

HECTOR J. CHAVEZ,  No. CIV S-07-1561-MCE-CMK-P

    Petitioner,

  vs.  FINDINGS AND RECOMMENDATIONS

GEORGE M. GALAZA,

    Respondent.

                             /

       Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pending before the court are petitioner's petition for a writ of habeas corpus (Doc. 1), respondent's answer (Doc. 13), and petitioner's reply (Doc. 15).  Petitioner raises one claim of ineffective assistance of trial counsel.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1

# I. BACKGROUND

### A. Facts[1]

The state court recited the following facts, and petitioner has not offered any clear and convincing evidence to rebut the presumption that these facts are correct:

> R.A. was married to defendant from August 1990 until September 2003. They have three sons, ages 15, 14, and 11. They remained in contact after the divorce, and in February 2004, defendant helped R.A. move to a new residence. Although she had obtained a restraining order against him, she gave him the option of moving in with her and their sons. Defendant moved his clothing to R.A.'s house and stayed with her for a few days.
>
> On February 19, 2004, R.A. went to work and spoke to defendant by telephone. They argued, and he accused her of being away from work and of cheating on him. Throughout their relationship, he had accused her of seeing other men.
>
> That evening, R.A. returned home and prepared to take the youngest son to a gym. In an angry tone, defendant told her to drop off the son and "come right back." She took the son to the gym, ran errands, picked up the son from the gym, looked unsuccessfully for the older sons, and then returned home with the youngest son.
>
> Defendant asked R.A. why she did not come right home, and she replied, "because I didn't want to." He grabbed her hand and pulled her toward the bedroom. Afraid that he would hurt her, she tried to pull away. He put her on the hallway floor, got on top of her and used his body weight to keep her down. He put at least one thumb against her throat. She had difficulty breathing and became light-headed.
>
> R.A. told the son to call 911. Defendant grabbed the son and threw him to the floor while he continued to hold R.A. down, choking her. Defendant held both victims down and told R.A. to shut up. Eventually, he let them both go. They fled from the house and called the police. The son never saw a knife or other object in R.A.'s hands.
>
> R.A. told a responding police officer that defendant, her ex-husband, had choked her, pulled her hair and threatened to destroy everything in her house. The officer entered the house and found two knives, one of which was broken, atop a large-screen television with a damaged screen. VCR or DVD equipment was thrown on the floor. Defendant was not present.

///

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made by a State court shall be presumed to be correct." Petitioner bears the burden of rebutting this presumption by clear and convincing evidence. See id. These facts are, therefore, drawn from the state court's opinion(s), lodged in this court. Petitioner may also be referred to as "defendant."

Both victims went to the police station where they were interviewed and their injuries photographed. When they returned to her residence, R.A. told the officer, "he's here." The officer went to the door. Defendant opened the door and the officer arrested him. Defendant showed the officer a small cut on his finger, which was not bleeding, and said that R.A. had stabbed him.

After defendant was secured in the patrol car, R.A. and the officer reentered the house. R.A. found her clothing strewn over her bedroom. Every piece of clothing, and every pair of shoes, had been torn, stabbed or cut. The bedroom mattress was sliced open. After defendant was advised of his rights, he admitted that he had damaged the property but denied that he had choked R.A. Defendant said that R.A. had tried to stab him, but he was too fast for her. He said that she had stabbed him in the past. R.A. admitted to the officer that she had stabbed defendant on a prior occasion.

R.A. found four knives: one each in the bedroom, bathroom, kitchen, and living room. Electrical cords for several appliances were cut. The undergarments and swimsuit in her dresser were cut. The damaged television cost $2,800, the more than 30 pairs of damaged shoes cost thousands of dollars, and the damaged clothing cost additional thousands of dollars.

R.A. experienced soreness on the day after the attack and had difficulty swallowing for two days after the attack. She had bruises on her back, shoulder, left hip, right wrist, right forearm, and left arm.

R.A. testified that defendant committed three prior acts of domestic violence against her.

In September 1991, defendant cut her clothing and shoes and destroyed her waterbed. He dented her car, broke its windshield, cut its back seat, and put dirt in its engine. Defendant cut the electrical cords to her washer and dryer, ripped her stereo speakers, broke her television, and damaged her furniture, including braking [sic] the glass top of her kitchen table.

R.A. reported the 1991 incident to the police. A responding officer observed the damage to her appliances, bed, clothing, and furniture. Defendant admitted to the officer that he caused the damage. The officer observed injuries to R.A.'s face, head, and neck. She stated that defendant pushed her by the throat and struck her on the face and head. During the interview, the officer left for approximately 10 minutes and, when he returned, he observed that defendant had caused additional damage to the furniture in the residence.

In April 1992, defendant became angry and hit R.A. in the head. She experienced great pain and was treated at an urgent care center. She told hospital staff that she did not know who assaulted her because she was afraid defendant would become angrier. Defendant would accuse her of seeing other men and then he would remove her clothing and put his finger in her vagina to determine whether she had had sex with someone else.

In July 1993, defendant accused R.A. of having affairs. While she was lying down, he grabbed her and cut off her hair. She reported the incident to the police, and a responding officer found her hair in a nearby trash can. The officer interviewed defendant, who denied cutting the hair.

3

Between 1993 and 2004, defendant broke a telephone and a chair in the dining room.  R.A. testified that this violence was not done to her directly and was confined to material items.

R.A. admitted that she had committed acts of domestic violence against defendant.  In 1987, at around the time they first met, she hit him with a two-by-four.

In November 1995, when she was upset with him regarding his drug use, she stabbed him in the arm with a utility knife.  She was sentenced to anger management classes and performed community service.

In 2002, R.A. hit defendant in the nose because she thought he was using drugs.

Petitioner's defense at trial was that R.A. had stabbed him on prior occasions and that the February 2004 incident was essentially self defense.  According to petitioner, he could not have choked R.A. because there were no marks on her neck consistent with choking.

**B.    Procedural History**

Petitioner was convicted on August 11, 2004, of inflicting corporal injury on his former spouse, vandalism with damage in excess of $400.00, dissuading a witness, misdemeanor battery, and misdemeanor child endangerment.  He was found to have a prior serious felony strike conviction.  Petitioner was sentenced on December 10, 2004, to 13 years and 4 months in state prison.  The conviction and sentence were affirmed on February 15, 2006.  The California Supreme Court denied direct review on May 10, 2006.

Petitioner filed a habeas corpus petition in the Yolo County Superior Court arguing ineffective assistance of counsel.  The Superior Court summarily denied the petition on November 22, 2006.  In its order, the Superior Court stated:

> . . . Petitioner has failed to make a prima facie showing that he is entitled to relief . . . because he has not presented any evidence suggesting that counsel's behavior fell below applicable professional standards or that the tactical decisions of his counsel improperly prejudiced the outcome of his trial. (*Strickland v. Washington* (1984) 466 U.S. 698).

He then filed a habeas petition in the California Court of Appeal, which denied relief without comment or citation on January 4, 2007.  Finally, petitioner filed a habeas petition in the California Supreme Court, which denied relief, also without comment or citation, on June 13, 2007.  Respondent concedes that petitioner's sole claim is exhausted.

4

## II. STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable. See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998). The AEDPA does not, however, apply in all circumstances. When it is clear that a state court has not reached the merits of a petitioner's claim, because it was not raised in state court or because the court denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal habeas court must review the claim de novo. See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where state court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner). When the state court does not reach the merits of a claim, "concerns about comity and federalism . . . do not exist." Pirtle, 313 F. 3d at 1167.

Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F. 3d 1223, 1229 (9th Cir. 2001). Thus,

under § 2254(d), federal habeas relief is available where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law. Under both standards, "clearly established law" means only those holdings of the United States Supreme Court as of the time of the relevant state court decision. See Carey v. Musladin, 127 S.Ct. 649, 653-54 (2006). "What matters are the holdings of the Supreme Court, not the holdings of lower federal courts." Plumlee v. Masto, 512 F.3d 1204 (9th Cir. Jan. 17, 2008) (en banc).

In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a majority of the Court), the United States Supreme Court explained these different standards. A state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by the Supreme Court on the same question of law, or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts. See id. at 405. A state court decision is also "contrary to" established law if it applies a rule which contradicts the governing law set forth in Supreme Court cases. See id. In sum, the petitioner must demonstrate that Supreme Court precedent requires a contrary outcome because the state court applied the wrong legal rules. Thus, a state court decision applying the correct legal rule from Supreme Court cases to the facts of a particular case is not reviewed under the "contrary to" standard. See id. at 406. If a state court decision is "contrary to" clearly established law, it is reviewed to determine first whether it resulted in constitutional error. See Benn v. Lambert, 293 F.3d 1040, 1052 n.6 (9th Cir. 2002). If so, the next question is whether such error was structural, in which case federal habeas relief is warranted. See id. If the error was not structural, the final question is whether the error had a substantial and injurious effect on the verdict, or was harmless. See id.

State court decisions are reviewed under the far more deferential "unreasonable application of" standard where it identifies the correct legal rule from Supreme Court cases, but unreasonably applies the rule to the facts of a particular case. See id.; see also Wiggins v. Smith, 123 S.Ct. 252 (2003). While declining to rule on the issue, the Supreme Court in Williams, suggested that federal habeas relief may be available under this standard where the state court

either unreasonably extends a legal principle to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. See Williams, 529 U.S. at 408-09.  The Supreme Court has, however, made it clear that a state court decision is not an "unreasonable application of" controlling law simply because it is an erroneous or incorrect application of federal law.  See id. at 410; see also Lockyer v. Andrade, 123 S.Ct. 1166, 1175 (2003).  An "unreasonable application of" controlling law cannot necessarily be found even where the federal habeas court concludes that the state court decision is clearly erroneous.  See Lockyer, 123 S.Ct. at 1175.  This is because ". . . the gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."  Id.  As with state court decisions which are "contrary to" established federal law, where a state court decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless unavailable if the error was non-structural and harmless.  See Benn, 283 F.3d at 1052 n.6.

The "unreasonable application of" standard also applies where the state court denies a claim without providing any reasoning whatsoever.  See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 233 F.3d 976, 982 (9th Cir. 2000).   Such decisions are considered adjudications on the merits and are, therefore, entitled to deference under the AEDPA.  See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 233 F.3d at 982. The federal habeas court assumes that state court applied the correct law and analyzes whether the state court's summary denial was based on an objectively unreasonable application of that law.  See Himes, 336 F.3d at 853; Delgado, 233 F.3d at 982.

/ / /

/ / /

/ / /

/ / /

/ / /

7

### III. DISCUSSION

Petitioner raises one claim of ineffective assistance of trial counsel. He claims:

> During the month of April 2004, Petitioner, based on his religious convictions and faith in God, made a conscientious, moral, and ethical decision to provide a handwritten letter to Superior Court Judge Shockley stating forth facts, confessions, and admissions. The letter is now missing or simply was not included in Petitioner's transcripts. (See Exhibit A). During the 3rd day of June 2004, Petitioner clearly made his wishes known to counsel requesting that counsel present the facts and truth of the letter that had been provided to Judge Shockley upon which time counsel rejected and declined Petitioner's request, stating "Your [sic] tieing [sic] up my hands and I can't win your case this way." Petitioner expressed to counsel that all he wanted was that the truth be told at which time counsel refused to cooperate and failed to make corrections in defense tactics. Petitioner claims that counsel was incompetent and did not act as a conscientious diligent advocate in that he knowingly allowed perjured testimony to go uncorrected. Also, defense counsel fail[ed] to present a defense that was requested by the Petitioner when the requested defense was the only viable one that was available and when the Petitioner had clearly expressed the request. Counsel also failed in that he chose to override Petitioner's expressed wishes on the matters of fundamental importance. Petitioner's right to present a defense was clearly violated in that defense counsel failed to cooperate in support of evidence that held a more favorable outcome. Counsel also failed in that counsel subjected the Petitioner to a sentence that could not otherwise have been imposed and it is reasonably probable that the Petitioner would have had the opportunity to present a beneficial plea bargain to the court for its approval or rejection. Also, counsel's acts and omissions fell below the standard of reasonable diligence, absent this failing it is reasonably probable that the bargain would have been acceptable to the Petitioner, the prosecution, and the trial court and that the bargain's terms would have been more favorable to the Petitioner than the actual result of the proceedings. Petitioner claims there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different and a reasonable probability is probability sufficient to undermine confidence in the outcome.

Attached to the petition as Exhibit A is a two-page portion of the trial transcript. Attached as Exhibit B is an August 3, 2006, letter petitioner wrote to his trial counsel, Michael J. Keene. In that letter, petitioner stated:

> I Hector Chavez am in the process of preparing a writ of habeas corpus. In doing so, I need a declaration from you addressing the following questions:
>
> I wrote a letter of accountability to Judge Shockley in that letter I

8

confessed that I had lied and that I was guilty and that I only wanted to tell the truth and that I would not lie in court:

1. Why is that letter missing from my transcripts.

2. Why did you misrepresent me after knowing this truth.

3. Why did you fail to cooperate upon my request to present this truth.

4. Why did you fail to make corrections in your defense tactics after knowing that I had made false statements.

5. Why did you override my request and disregard my wishes to present the court with my letter knowing that it was the most viable and less damaging defense that would not have resulted in a less favorable outcome.

I need your response by August 31, 2006, or I will be forced to file the writ without your declaration.

Also attached to the petition is an August 12, 2006, response letter from Chief Deputy Public Defender Jessie Morris, Jr. That letter states:

> Your letter to Michael Keene arrived at our office. Attorney Keene no longer works at this office, so your letter was forwarded to me.
>
> I am not sure what your letter refers to when you discuss a writ of habeas corpus. When I looked at your file, there was a question about sentencing credits, and on August 2, 2006, department 2, Judge Stephen L. Mock presiding, awarded you three additional days credit that was given you in the earlier order.
>
> However, from the language of your letter, you seem to be speaking of something other than time credits, and I am not sure what it is. Please be more specific about what you request of the Public Defender's Officer and write me. As you write, please understand that Mr. Keene does not work here any longer and anything that you need me to know needs to be in your letter.

Respondent has lodged petitioner's April 2004 letter. In that letter, dated April 1, 2004, petitioner stated that he "walked in here a guilty man and I will not lie in court, but that guilty man is dead and a new man is resurrected. . . ." He also stated that he was "seeking to understand myself" and that he felt he had "experienced a dynamic metamorphosis." This letter was addressed to Judge Shockley, who did not preside at petitioner's trial. Prior to trial, defense counsel addressed the letter during in limine motions. Specifically, counsel sated: "I don't think

9

that it benefits the People or the Defense. I think it's somewhat of a generic letter indicating that the defendant is someone who found peace within himself." Counsel also stated that he felt it was unclear whether the letter constituted an admission. Counsel asked that the letter be excluded. The prosecutor, who had also read the letter, did not oppose the request to exclude it. The trial court granted the request and the letter was not used at petitioner's trial.

The Sixth Amendment guarantees the effective assistance of counsel. The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984). First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. See id. at 688. To this end, petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. See id. at 690. The federal court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. See id. In making this determination, however, there is a strong presumption "that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

Second, a petitioner must affirmatively prove prejudice. See Strickland, 466 U.S. at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.; see also Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000). A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at

10

697).

In response to petitioner's claim of ineffective assistance of counsel, respondent argues:

> Petitioner has simply failed to establish that counsel's performance in failing to use the letter in his defense was deficient. In the first place, since the letter was hearsay, Petitioner fails to explain how it could have been used in his trial. Furthermore, it is pure speculation whether the letter could have assisted Petitioner in obtaining a plea bargain. It is clear from the record that the prosecutor had read the letter, thus any impact it may have had on her for purposes of plea negotiations was achieved. Petitioner fails to demonstrate what actions defense counsel should have taken and how Petitioner would have benefitted from those actions. Even if Petitioner were able to establish that counsel's tactics with respect to the letter were in some way objectively deficient, he has not shown, as he must, that there is a reasonable probability that, but for counsel's conduct, the result of the proceeding would have been different. (citation omitted). In this context, a reasonable probability is a probability sufficient to undermine confidence in the outcome. (citation omitted). Defense counsel's tactic in moving to exclude any reference to this letter in which Petitioner stated that he "walked in here a guilty man" was not only a reasonable tactical decision, but there is no reasonable probability that, had counsel, acted differently, the result of Petitioner's trial would have been different.

Respondent concludes that petitioner has failed to meet his burden of establishing that the state court's rejection of his claim was objectively unreasonable.

It appears that the primary basis for petitioner's claim is that his April 2004 letter should have been used to produce a favorable plea bargain. However, as respondent notes, the prosecutor had read the letter and, nonetheless, declined to offer any plea bargain to petitioner. To the extent petitioner asserts that counsel was ineffective for <u>not</u> using the letter at trial, that claim is simply ridiculous. Had the letter been introduced at trial, it would only have hurt his case given the potential the jury would have treated it as an admission of guilt. Counsel acted appropriately in obtaining a pre-trial order from the trial judge that the letter would be excluded. Had counsel acted any differently, it is probable that the result of the trial would have been worse, not better as petitioner contends. Thus, not only was counsel's performance not defective, there was no prejudice. For all these reasons, the court agrees with respondent that the state

court's decision was not objectively unreasonable.

### IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that:

    1.    Petitioner's petition for a writ of habeas corpus (Doc. 1) be denied; and

    2.    The Clerk of the Court be directed to enter judgment and close this file.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 11, 2008

_____

**CRAIG M. KELLISON**

UNITED STATES MAGISTRATE JUDGE